**RAYNES McCARTY**
Regina M. Foley
One Greentree Centre
10,000 Lincoln Drive East, Suite 201
Marlton, NJ 08053
(856) 854-1556
rmfoley@raynesmccarty.com
Attorney for Plaintiff

| | |
|---|---|
| EDWARD W. KELLIHER<br>382 East Beck Street<br>Columbus, OH   43206 | : IN THE UNITED STATES DISTRICT COURT<br>: FOR THE DISTRICT OF NEW JERSEY<br>: |
| Plaintiff | : CIVIL ACTION NO. |
| v. | : |
| KAMAL F. KASSIS, M.D.<br>415 Chris Gaupp Drive, Suite E<br>Galloway, NJ 08205<br>and | : |
| PETER N. THOMPSON, M.D.<br>1925 Pacific Avenue<br>Atlantic City, NJ 08401<br>and | : COMPLAINT<br>: JURY DEMAND<br>: CERTIFICATION PURSUANT TO L.CIV.R.<br>: 11.2 |
| ATLANTICARE PHYSICIAN GROUP<br>SURGICAL ASSOCIATES<br>415 Chris Gaupp Drive, Suite E<br>Galloway, NJ 08205<br>and | : CERTIFICATION OF AMOUNT IN<br>: CONTROVERSY<br>: |
| ATLANTICARE PHYSICIAN GROUP P.A.<br>2500 English Creek Ave., Building 500<br>Egg Harbor Township, NJ 08234<br>and | : |
| BOARDWALK SURGICAL ASSOCIATES,<br>P.A.<br>6725 Ventnor Avenue<br>Ventnor, NJ 08406<br>and | : |
| ATLANTICARE REGIONAL MEDICAL<br>CENTER, INC.<br>1925 Pacific Avenue<br>Atlantic City, NJ 08401<br>and | : |

JOHN DOES, fictitious names of unknown          :
individuals                                     :
     and                :
JANE DOES, fictitious names of unknown          :
individuals                                     :
     and                :
XYZ CORPORATIONS,                               :
fictitious names of corporations,              :
partnerships or other legal entities            :
     Defendants         :
                                                :
                                                :

## <u>COMPLAINT</u>

I.     **<u>ADDRESSES OF ALL PARTIES UNDER LOCAL RULE 10.1</u>**

    1.     The parties to the present action and their respective addresses, to the best of

plaintiff's knowledge at present, are:

    EDWARD W. KELLIHER
    382 East Beck Street
    Columbus, OH   43206

    KAMAL F. KASSIS, M.D.
    415 Chris Gaupp Drive, Suite E
    Galloway, NJ 08205

    PETER N. THOMPSON, M.D.
    1925 Pacific Avenue
    Atlantic City, NJ 08401

    ATLANTICARE PHYSICIAN GROUP SURGICAL ASSOCIATES
    415 Chris Gaupp Drive, Suite E
    Galloway, NJ 08205

    ATLANTICARE PHYSICIAN GROUP P.A.
    2500 English Creek Ave., Building 500
    Egg Harbor Township, NJ 08234

BOARDWALK SURGICAL ASSOCIATES, P.A.
6725 Ventnor Avenue
Ventnor, NJ 08406

ATLANTICARE REGIONAL MEDICAL CENTER, INC.
1925 Pacific Avenue
Atlantic City, NJ 08401.

## II.    **INTRODUCTION**

2.      Plaintiff Edward Kelliher sought treatment from defendants for a fracture of his right lower extremity.   If treated properly, Mr. Kelliher's foot and lower leg could have been saved.   But defendants misdiagnosed a vascular obstruction in his right foot as compartment syndrome and tarsal tunnel syndrome; failed to use formal angiography to assess his vascular obstruction; and failed to treat his vascular obstruction with any of several modalities including interventions such as mechanical thrombectomy (e.g. AngioJet), angioplasty, embolectomy, tissue plasminogen activator (tPA), anticoagulation and anti-platelet therapy.   By the time he received appropriate treatment, at a different institution, it was too late; his foot and lower leg had to be amputated.   Defendants' multiple deviations from the standard of care directly led to the amputation of his foot and lower leg, deprived Mr. Kelliher of a significant opportunity to save his right foot and lower leg, and increased the risk that he would suffer tissue death and amputation.

## II.    **THE PARTIES**

3.       Plaintiff Edward W. Kelliher is a citizen and resident of the State of Ohio, residing therein at 382 East Beck Street, Columbus, Ohio 43206.

4.      Defendant Kamal F. Kassis, M.D. is an adult individual, citizen of the State of New Jersey, and physician who, at all times relevant to this action, was practicing medicine in the State of New Jersey, and doing business at 415 Chris Gaupp Drive, Suite E, Galloway, NJ 08205, and as

3

such professed and held himself out to the public, and in particular to plaintiff Edward Kelliher, as being skilled, careful, and diligent in the practice of his profession.

5.      Defendant Kamal F. Kassis, M.D., was acting as an employee and/or the actual or ostensible agent of defendants AtlantiCare Physician Group Surgical Associates, AtlantiCare Physician Group P.A., AtlantiCare Regional Medical Center, Inc., John Does, Jane Does and XYZ Corporations, and was acting within the course and scope and his agency and/or employment.

6.      At all times relevant hereto, defendant Kamal F. Kassis, M.D., with and through his partners, joint venturers, agents, servants, employees and/or ostensible agents, provided care, treatment, medical advice, and had a physician-patient relationship with Edward Kelliher and rendered services to him in Atlantic County, New Jersey.

7.      At all times relevant hereto, Kamal F. Kassis, M.D. acted by and through his partners, joint venturers, agents, servants, employees, and/or ostensible agents, including without limitation the other named defendants herein as well as other physicians, physician assistants, nurse practitioners, nurses, medical and office personnel whose identities currently are unknown to plaintiff, all of whom were acting under the control or right of control of Kamal F. Kassis, M.D. and during the course and scope of their employment, authority or apparent authority.

8.      Defendant Peter N. Thompson, M.D. is an adult individual, citizen of the State of New Jersey and physician who, at all times relevant to this action, was practicing medicine in the State of New Jersey, and doing business at 1925 Pacific Avenue, Atlantic City, NJ 08401, and as such professed and held himself out to the public, and in particular to plaintiff Edward Kelliher, as being skilled, careful, and diligent in the practice of his profession.

9.      At all times relevant hereto, Defendant Peter N. Thompson, M.D., was acting as an employee and/or the actual or ostensible agent of defendants Boardwalk Surgical Associates, P.A., AtlantiCare Regional Medical Center, Inc., John Does, Jane Does and XYZ Corporations, and was acting within the course and scope and his agency and/or employment.

10.      At all times relevant hereto, defendant Peter N. Thompson, M.D., with and through his partners, joint venturers, agents, servants, employees and/or ostensible agents, provided care, treatment, medical advice, and had a physician-patient relationship with Edward Kelliher and rendered services to him in Atlantic County, New Jersey.

11.      At all times relevant hereto, Peter N. Thompson, M.D. acted by and through his partners, joint venturers, agents, servants, employees, and/or ostensible agents, including without limitation the other named defendants herein as well as other physicians, physician assistants, nurse practitioners, nurses, medical and office personnel whose identities cannot be known to plaintiff until discovery is conducted, but who are known to and/or easily identifiable by defendants, all of whom were acting under the control or right of control of Peter N. Thompson, M.D. and during the course and scope of their employment, authority or apparent authority.

12.      Defendant AtlantiCare Physician Group Surgical Associates (hereinafter "APG Surgical Associates") is and was at all times relevant hereto, a corporation or other type of business entity organized and existing under the laws of New Jersey with a place of business at 415 Chris Gaupp Drive, Suite E, Galloway, NJ 08205.

13.      Defendant APG Surgical Associates employed, hired, supervised, controlled and managed individuals providing health care services at AtlantiCare Regional Medical Center, including but not limited to defendants Kamal F. Kassis, M.D., John Does and Jane Does.

14.    At all times relevant hereto, APG Surgical Associates acted by and through its partners, joint venturers, agents, servants, employees, and/or ostensible agents, including without limitation the other named defendants herein as well as other physicians, physician assistants, nurse practitioners, nurses, medical and office personnel whose identities cannot be known to plaintiff until discovery is conducted, but who are known to and/or easily identifiable by defendants, all of whom were acting under the control or right of control of APG Surgical Associates and during the course and scope of their employment, authority or apparent authority.

15.    At all times relevant hereto, defendant APG Surgical Associates, with and through its partners, joint venturers, agents, servants, employees and/or ostensible agents, provided care, treatment, medical advice, and had a physician-patient relationship with Edward Kelliher and rendered services to him in Atlantic County, New Jersey.

16.    Defendant AtlantiCare Physician Group P.A. (hereinafter "AtlantiCare Physician Group") is and was at all times relevant hereto, a corporation or other type of business entity organized and existing under the laws of New Jersey with a place of business at 2500 English Creek Ave., Building 500, Egg Harbor Township, NJ 08234.

17.    Defendant AtlantiCare Physician Group employed, hired, supervised, controlled and managed individuals providing health care services at AtlantiCare Regional Medical Center, including but not limited to defendants Kamal F. Kassis, M.D., John Does and Jane Does.

18.    At all times relevant hereto, AtlantiCare Physician Group acted by and through its partners, joint venturers, agents, servants, employees, and/or ostensible agents, including without limitation the other named defendants herein as well as other physicians, physician assistants, nurse practitioners, nurses, medical and office personnel whose identities cannot be known to

6

plaintiff until discovery is conducted, but who are known to and/or easily identifiable by defendants, all of whom were acting under the control or right of control of AtlantiCare Physician Group and during the course and scope of their employment, authority or apparent authority.

19.     At all times relevant hereto, defendant AtlantiCare Physician Group, with and through its partners, joint venturers, agents, servants, employees and/or ostensible agents, provided care, treatment, medical advice, and had a physician-patient relationship with Edward Kelliher and rendered services to him in Atlantic County, New Jersey.

20.     Defendant Boardwalk Surgical Associates, P.A. (hereinafter "Boardwalk Surgical Associates") is and was at all times relevant hereto, a corporation or other type of business entity organized and existing under the laws of New Jersey with a place of business at 6725 Ventnor Avenue, Ventnor, NJ 08406.

21.     Defendant Boardwalk Surgical Associates employed, hired, supervised, controlled and managed individuals providing health care services at AtlantiCare Regional Medical Center, including but not limited to defendants Peter N. Thompson, M.D., John Does and Jane Does.

22.     At all times relevant hereto, Boardwalk Surgical Associates acted by and through its partners, joint venturers, agents, servants, employees, and/or ostensible agents, including without limitation the other named defendants herein as well as other physicians, physician assistants, nurse practitioners, nurses, medical and office personnel whose identities cannot be known to plaintiff until discovery is conducted, but who are known to and/or easily identifiable by defendants, all of whom were acting under the control or right of control of Boardwalk Surgical Associates and during the course and scope of their employment, authority or apparent authority.

7

23.     At all times relevant hereto, defendant Boardwalk Surgical Associates, with and through its partners, joint venturers, agents, servants, employees and/or ostensible agents, provided care, treatment, medical advice, and had a physician-patient relationship with Edward Kelliher and rendered services to him in Atlantic County, New Jersey.

24.     Defendant AtlantiCare Regional Medical Center, Inc. is and was at all times relevant to this action a corporation, or other type of business entity organized and existing under the laws of New Jersey for the purposes of operating health care facilities, maintaining a principal place of business and/or doing business at 1925 Pacific Avenue, Atlantic City, NJ 08401.

25.     At all times relevant hereto, AtlantiCare Regional Medical Center, Inc. acted by and through its partners, joint venturers, agents, servants, employees, and/or ostensible agents, including without limitation the other named defendants herein as well as other physicians, physician assistants, nurse practitioners, nurses, medical and office personnel whose identities cannot be known to plaintiff until discovery is conducted, but who are known to and/or easily identifiable by defendants, all of whom were acting under the control or right of control of AtlantiCare Regional Medical Center, Inc. and during the course and scope of their employment, authority or apparent authority.

26.     At all times relevant hereto, defendant AtlantiCare Regional Medical Center, Inc., with and through its partners, joint venturers, agents, servants, employees and/or ostensible agents, provided care, treatment, medical advice, and had a physician-patient relationship with Edward Kelliher and rendered services to him in Atlantic County, New Jersey.

27.     At all times relevant to this action, defendant AtlantiCare Regional Medical Center, Inc. owned, operated, managed, maintained, and/or controlled a hospital located at 1925 Pacific

Avenue, Atlantic City, NJ 08401, and did so through its actual and ostensible agents, servants, and employees who were acting within the course and scope of their agency and/or employment.

28.     Defendant AtlantiCare Regional Medical Center, Inc. employed, hired, supervised, controlled and managed those individuals providing health care services on its premises, including but not limited to defendants Kamal F. Kassis, M.D., Peter N. Thompson, M.D., John Does and Jane Does.

29.     Defendants John Doe and Jane Doe are fictitious names of individuals whose identities are not currently known to plaintiff and were involved with Edward Kelliher's care while he was at AtlantiCare Regional Medical Center in May of 2012 and/or participated in the care provided to Mr. Kelliher, as described hereinafter.

30.     Defendants XYZ Corporations are fictitious names for corporations, partnerships and/or other legal entities whose identities are not currently known to plaintiff and were involved with Edward Kelliher's care while he was at AtlantiCare Regional Medical Center in May of 2012 and/or participated in the care provided to Mr. Kelliher, as described hereinafter.

## III.   JURISDICTION AND VENUE

31.     The United States District Court for the District of New Jersey has jurisdiction over this matter on the basis of 28 U.S.C.A. § 1332, insofar as the matter in controversy exceeds the value of $150,000, exclusive of interest of costs, and is between citizens of different states. Venue is proper based on 28 U.S.C.A. § 1391.

## IV.    **FACTUAL BACKGROUND**

32.    Early in the morning on May 19, 2012, plaintiff Edward Kelleher suffered an injury to his right lower extremity.    He was taken to AtlantiCare Regional Medical Center and admitted for treatment through the emergency department on the same morning.

33.    Evaluation in the emergency department revealed that Mr. Kelliher's right ankle displayed range of motion that was limited by pain, swelling, tenderness and deformity with no signs of compartment syndrome.    His motor strength was described as 5/5 in all extremities and the neurovascular status of the extremity was described as intact distal to injury, with 2+ distal pulses palpable and brisk capillary refill noted.

34.    Radiology revealed that he had suffered a distal diaphyseal fibular comminuted fracture with evidence of medial angulation and minimal displacement, a comminuted nondisplaced slightly angulated diaphyseal tibial fracture, a displaced medial malleolar fracture, and a small avulsion fracture inferior to the talus and adjacent to the distal fibula.

35.    On May 19, 2012, Mr. Kelliher was evaluated by Bradford Tucker, M.D. (Orthopedic Surgeon), who diagnosed a right ankle displaced pilon fracture and advised placing a spanning external fixator, with definitive open reduction internal fixation performed once swelling resolved in 1-3 weeks.

36.    At the time of Dr. Tucker's examination of Mr. Kelliher's right ankle on May 19, he noted that he was neurovascularly intact.

37.    On May 19, Mr. Kelliher was taken to the operating room where Dr. Tucker performed a closed reduction and application of a Stryker external fixator, to address the right ankle pilon, comminuted, intrarticular fracture.

38.     A nursing note entered at 8:05 PM on May 19 assessing Mr. Kelliher's neurovascular status noted his right foot nail bed was pink, his right lower extremity temperature was warm, and his dorsalis pedis pulse on the right was 2+ normal.

39.     A nursing note entered at 3:05 AM on May 20 assessing Mr. Kelliher's neurovascular status noted his right foot nail bed was dusky, his right lower extremity was cold, his dorsalis pedis pulse was 1+ thread, and he was experiencing "pain – deep, throbbing, unrelenting, localized, increasing, out of proportion to the injury."

40.     The hospital's orthopedic service was contacted and care providers continued to monitor Mr. Kelliher's neurovascular status throughout the day.

41.     At 8:00 PM on May 20, a nursing note recorded an inability to assess a pulse in Mr. Kelliher's right foot, including with Doppler.

42.     By May 20, Mr. Kelliher had symptoms of a potential vascular obstruction causing diminished circulation in his right lower extremity.

43.     A vascular obstruction causing diminished circulation to the lower extremity is a medical emergency requiring immediate and conclusive assessment via formal angiogram and treatment to remove the obstruction.

44.     Defendant Kamal F. Kassis, M.D., who is a vascular surgeon, became involved in Mr. Kelliher's care on May 21.   Dr. Kassis identified signs and symptoms that should have revealed to him Mr. Kelliher's vascular obstruction.   In particular, he identified vascular symptoms including "difficulty hearing any flow in the dorsalis pedis in the foot itself," "very weak Doppler flow along the plantar arch on the plantar aspect of the right foot," swelling, pain, and decreased range of motion.

11

45.     Nonetheless, Dr. Kassis attributed the pain to the injury and swelling, and neither ordered measures to effectively assess the vascular status of his right lower extremity, nor treated his vascular obstruction.

46.     Dr. Kassis failed to order a formal angiogram to assess Mr. Kelliher's vascular status.

47.     Dr. Kassis also failed to treat Mr. Kelliher's vascular obstruction using any of a number of available techniques including, but not limited to mechanical thrombectomy (e.g. AngioJet), embolectomy, tissue plasminogen activator (tPA), anti-coagulation and anti-platelet therapy.

48.     On the 21st and 22nd of May, Mr. Kelliher's right lower extremity became increasingly swollen and discolored, and pulses were difficult and sometimes impossible to detect.

49.     On May 22, Heidi Griffith, M.D., the hospitalist, documented Mr. Kelliher's significant right foot pain and swelling, noting in part an impression of: "Right leg vascular compromise, rule out compartment syndrome. Vascular surgeon on board. No dorsalis pedis pulse. Ortho recontacted for evaluation."

50.     On May 22 at 11:00 AM, Dr. Kassis assessed Mr. Kelliher's foot, found no dorsalis pedis pulse present, noted increased swelling, and identified compartment syndrome as a possible cause of Mr. Kelliher's symptoms.

51.     For the remainder of May 22, nursing notes document increased swelling, decreased sensation, inability to move toes, and unrelenting pain in Mr. Kelliher's right foot.

52.     Though Mr. Kelliher's condition remained unchanged on May 23, with pain, swelling, discoloration, and absent pulses, defendants did not perform any diagnostic studies or treatments on Mr. Kelliher.

53.     On May 24, 2012, Mr. Kelliher underwent a right tarsal tunnel release to address the defendants' mistaken concern that Mr. Kelliher was suffering from compartment syndrome or tarsal tunnel syndrome.   The surgeon removed a significant amount of hematoma.

54.     The surgeon, Dr. Joseph Daniel, noted the absence of a dorsalis pedis pulse and the cool temperature of Mr. Kelliher's right foot, and expressed concerns about the possibility that Mr. Kelliher had an arterial injury in his right lower extremity.

55.     In his May 24 Report of Operation, Dr. Daniels noted that "It is noteworthy that C-arm was used generously throughout the case and there is no evidence of impingement of vascular with bone anatomy."

56.     In his May 24 Report of Operation, Dr. Daniels noted that "we have reconsulted the Vascular Surgery Service" and "I have stressed to the primary team physician that re-evaluation from vascular standpoint is certainly warranted with the coolness to this individual's right foot."

57.     It was or should have been clear to defendants after Mr. Kelliher's May 24, 2012 surgery that his symptoms were not a result of compartment syndrome, tarsal tunnel syndrome, or any condition other than occluded arteries, and that Mr. Kelliher needed immediate diagnosis via angiogram and treatment.   Nonetheless, defendants did not order an angiogram or treat Mr. Kelliher's occluded arteries.

13

58.     On May 25, Mr. Kelliher continued to suffer significant pain in his right foot, decreased dorsalis pedis and posterior tibialis pulses, edema, ecchymosis, and bluish discoloration. Nonetheless, Dr. Kassis "determined nothing was to be done from his standpoint."

59.     Defendant Peter Thompson, M.D., a vascular surgeon, became involved with the care of Mr. Kelliher and evaluated him in the early evening on May 26, 2012.   Dr. Thompson noted the absence of blood flow in Mr. Kelliher's dorsalis pedis artery and the medial aspect of his forefoot, as well as pain, swelling, and purplish discoloration of his toes.

60.     Nonetheless, on May 26, Dr. Thompson ordered computed tomography angiography (CTA) to assess Mr. Kelliher's vascular status, and did not order a formal angiogram.

61.     CTA is a less effective means of assessing vascular status than formal angiogram, and the use of CTA only in this clinical setting was below the standard of care.

62.     The failure to perform formal angiogram was below the standard of care.

63.     On May 26, Mr. Kelliher underwent CTA of the abdomen and the right lower extremity.   This study was interpreted as revealing: "The dorsalis pedis artery becomes occluded at the level of the distal tibial fracture. The distal peroneal and posterior tibial arteries appear intact. It is difficult to see the very distal aspect of the posterior tibial artery secondary to artifact from the external fixator.   No evidence of inflow stenosis."

64.     On May 26, Mr. Kelliher was again taken to the operating room where Luke Austin, M.D., performed a right ankle irrigation and debridement, release of the flexor retinaculum and application of a wound VAC.

14

65.     In his May 26 Report of Operation, Dr. Austin noted that Mr. Kelliher was having significant pain over the medial aspect of his ankle and that flexor retinacular release was recommended to help improve blood flow and alleviate pain.

66.     In his May 26 Report of Operation, Dr. Austin noted that Dr. Kassis was aware of the patient's vascular status and was following the patient from a vascular standpoint.

67.     Dr. Thompson evaluated Mr. Kelliher again on the morning of May 27, 2012 and noted his continued symptoms of vascular compromise.   Separately, the orthopedic surgeon also assessed Mr. Kelliher on May 27, and noted, "the possible vascular compromise to the foot is urgent and needs to be addressed."   Nonetheless, defendants administered no further diagnostic studies or treatments to Mr. Kelliher.

68.     In a May 28, 2012 consultation note discussing his May 26 and May 27 evaluations of Mr. Kelliher, as well as his overall medical progress, including the results of the CTA, Dr. Thompson noted that there was evidence of tissue loss in the distal forefoot and a potentially threatened limb.

69.     In his May 28 consultation note, Dr. Thompson noted that given the anatomy that was clearly demonstrated by the CTA, a formal angiogram would provide no further useful information.

70.     In his May 28 consultation note, Dr. Thompson noted that he did not feel there were any good surgical, endovascular or interventional options to address Mr. Kelliher's right lower extremity.

71.     Dr. Thompson failed to order a formal angiogram to assess Mr. Kelliher's vascular status, and failed to treat Mr. Kelliher's vascular obstruction using any of a number of available

15

techniques including, but not limited to mechanical thrombectomy (e.g. AngioJet), embolectomy, tissue plasminogen activator (tPA), anti-coagulation and anti-platelet therapy.   In so doing, Dr. Thompson deprived Mr. Kelliher of a significant opportunity to save his right foot and lower leg, and increased the risk that he would suffer tissue death and amputation.

72.     On May 29, 2012, Mr. Kelliher was transferred to Grant Medical Center.

73.     Upon arrival to Grant Medical Center a history and physical examination was performed, and Melvin Hatfield, NP, documents that the first through fourth toes on Mr. Kelliher's right foot were cool and purplish.

74.     On May 30, 2012, Mr. Kelliher was evaluated by Kelsey Barrick, DPM, who noted that the first through fourth toes on the right foot were dusky, with delayed capillary refill time and that the right peroneal, anterior tibial and posterior tibial arteries were dopplerable at the level of the right ankle joint, the posterior tibial and peroneal pulses were dopplerable into the foot level, but that "unable to doppler DP into the foot. CFT (capillary refill time) delayed to digits 1-4, R." Dr. Barrick also noted "CT angio with reported occlusion of dorsalis pedis artery, Dr. Franz consulted for recommendations" and will plan to add pt on for angio this afternoon with Dr. Franz."

75.     On May 30, Mr. Kelliher was evaluated by Alex Simpson, M.D., an orthopedic surgeon, who noted that patient had some recent concerns of vascular compromise including a cold/dusky right foot and was transferred to Grant Medical Center to be evaluated by Grant Trauma and Orthopedic teams.

76.     On May 30 a right lower extremity angiogram was performed.

77.     On May 30, Mr. Kelliher underwent a right posterior tibial artery balloon angioplasty with AngioJet and tPA.   He was started on anticoagulant and antiplatelet therapy post-operatively.

78.     The procedures administered by care providers at Grant Medical Center successfully removed obstructions in the arteries serving Mr. Kelliher's right foot, including the anterior tibial and posterior tibial vessels, and restored blood flow to the foot.

79.     Unfortunately, defendants' negligence had delayed the performance of this intervention for so long that it was too late to save Mr. Kelliher's right lower extremity from eventual amputation.

80.     On May 31, 2012, Mr. Kelliher underwent a debridement of the right pilon fracture with excision of bone, craterization of the medial tibia, adjustment and re-reduction of tibial pilon injury, with application of vacuum assisted dressing.

81.     On June 2, 2012, Mr. Kelliher underwent debridement of the right ankle skin, subcutaneous tissue, muscle and bone with application of wound VAC.

82.     On June 4, 2012, Mr. Kelliher underwent debridement of right ankle skin, subcutaneous tissue and application of wound VAC.

83.     On June 6, 2012, Mr. Kelliher underwent an open reduction internal fixation of the right tibial pilon fracture, with associated fibular injury, removal of the right ankle external fixation system, debridement of right foot skin, subcutaneous tissue and intrinsic muscles of the foot, 15 x 15 cm, thrombectomy of the anterior tibial artery x2, left free latissimus dorsal flap to the right foot, split thickness skin graft from the left thigh to the right foot and application of a short leg splint.

84.      On June 7, 2012, Mr. Kelliher underwent evacuation of a hematoma from his left chest, complex closure of a 25 cm back wound, dressing change of the right foot under anesthesia and application of a short leg splint.

85.      In the following days, Mr. Kelliher's toes began to develop gangrenous necrosis.

86.      On June 19, 2012, Mr. Kelliher underwent amputation of the right great toe through the metatarsophalangeal joint and amputation of the right second, third and fourth toe through the interphalangeal joints to address gangrene of the right first through fourth toes.

87.      On June 22, 2012, Mr. Kelliher underwent amputation of the right first ray to further address the gangrene of his right foot.

88.      Mr. Kelliher was discharged from Grant Medical Center on June 26, 2012 with skilled nursing care though a home care agency to assist with wound care.

89.      Mr. Kelliher was evaluated in the emergency department of Grant Medical Center on July 26, 2012 for complaints of increasing right calf pain.

90.      Mr. Kelliher was readmitted to Grant Medical Center on August 2, 2012 when he was noted by his home health nurse to have purulence at his graft site with an elevated temperature. During this hospitalization he was diagnosed with acute osteomyelitis.

91.      On August 7, 2012, Mr. Kelliher underwent a debridement of his right foot. During the procedure, the surgeon found a large amount of dead, infected musculature in Mr. Kelliher's right lower extremity.   It was determined that the only viable treatment was below the knee amputation.

92.      On August 9, 2012 Mr. Kelliher underwent a right below the knee amputation.

18

93.     Defendants Kamal F. Kassis, M.D.; Peter N. Thompson, M.D.; AtlantiCare Physician Group Surgical Associates; AtlantiCare Physician Group P.A.; Boardwalk Surgical Associates, P.A.; AtlantiCare Regional Medical Center, Inc.; John Does; Jane Does and XYZ Corporations misdiagnosed Mr. Kelliher's condition as compartment syndrome and tarsal tunnel syndrome; failed to use formal angiography to assess his vascular obstruction; and failed to administer any treatment of Mr. Kelliher's vascular obstruction including but not limited to mechanical thrombectomy (e.g. AngioJet), embolectomy, tissue plasminogen activator (tPA), anti-coagulation or anti-platelet therapy.

94.     All of these acts and omissions constitute negligence and deviations from the standard of care.

95.     Defendants' negligence caused a delay in the diagnosis and treatment of Mr. Kelliher's vascular obstruction, increased the risk that Mr. Kelliher's right lower extremity would suffer tissue death and have to be amputated, deprived Mr. Kelliher of an opportunity to save his foot and lower leg, and in fact caused the amputation of Mr. Kelliher's foot and lower leg.

96.     Plaintiff's injuries and losses described herein were caused by the carelessness and negligence of defendants and were due in no manner whatsoever to any act or failure to act on the part of plaintiff or his subsequent care providers.

97.     As a direct result of the carelessness and negligence of defendants Kamal F. Kassis, M.D.; Peter N. Thompson, M.D.; AtlantiCare Physician Group Surgical Associates; AtlantiCare Physician Group P.A.; Boardwalk Surgical Associates, P.A.; AtlantiCare Regional Medical Center, Inc.; John Does; Jane Does and XYZ Corporations, plaintiff Edward Kelliher sustained

19

serious and permanent harm to his body and psyche, including but not limited to the amputation of his foot and lower leg, as described herein.

98.     As a direct result of the carelessness and negligence of defendants Kamal F. Kassis, M.D.; Peter N. Thompson, M.D.; AtlantiCare Physician Group Surgical Associates; AtlantiCare Physician Group P.A.; Boardwalk Surgical Associates, P.A.; AtlantiCare Regional Medical Center, Inc.; John Does; Jane Does and XYZ Corporations, plaintiff Edward Kelliher was hospitalized repeatedly and treated in hospitals and rehabilitation facilities and will, in the future, require medical and rehabilitation therapy.

99.     As a direct result of the carelessness and negligence of defendants Kamal F. Kassis, M.D.; Peter N. Thompson, M.D.; AtlantiCare Physician Group Surgical Associates; AtlantiCare Physician Group P.A.; Boardwalk Surgical Associates, P.A.; AtlantiCare Regional Medical Center, Inc.; John Does; Jane Does and XYZ Corporations, plaintiff Edward Kelliher has in the past and will continue in the future to expend money in payment of his medical expenses.

100.     As a direct result of the carelessness and negligence of defendants Kamal F. Kassis, M.D.; Peter N. Thompson, M.D.; AtlantiCare Physician Group Surgical Associates; AtlantiCare Physician Group P.A.; Boardwalk Surgical Associates, P.A.; AtlantiCare Regional Medical Center, Inc.; John Does; Jane Does and XYZ Corporations, plaintiff Edward Kelliher has suffered and will in the future suffer emotional and mental harm, pain, anguish, embarrassment, fear, humiliation, frustration, loss of well-being and other intangible injuries; Mr. Kelliher has been prevented and, in the future will be prevented, from attending to his normal activities and is and will be unable to pursue significant normal and ordinary pleasures of life.

101.     As a direct result of the carelessness and negligence of defendants Kamal F. Kassis, M.D.; Peter N. Thompson, M.D.; AtlantiCare Physician Group Surgical Associates; AtlantiCare Physician Group P.A.; Boardwalk Surgical Associates, P.A.; AtlantiCare Regional Medical Center, Inc.; John Does; Jane Does and XYZ Corporations, plaintiff Edward Kelliher has suffered a loss of earnings and will in the future experience a loss of earning capacity.

102.     All of the harms, injuries and losses sustained by plaintiff are continuous and permanent for an indefinite time into the future.

103.     The defendants' negligence increased the risk of harm to plaintiff of the very injuries he suffered and was a substantial factor in bringing about that harm.

**FIRST COUNT**
**NEGLIGENCE – MEDICAL MALPRACTICE**
**EDWARD KELLIHER v. ALL DEFENDANTS**

104.     Plaintiff realleges and incorporates by reference each and every preceding paragraph as though set forth fully at length.

105.     The injuries suffered by Edward Kelliher were the direct and proximate result of the negligence and carelessness of the defendants, and each of them, both generally and in the following particular respects:

    a.   Failing to properly treat Edward Kelliher;

    b.   Failing to adhere to the applicable standards of care within each defendant's medical specialty, including the practice area of vascular surgery;

    c.   Failing to demonstrate the degree of knowledge, competence and skill that would be expected of healthcare professionals in the community under the circumstances presented;

d.   Failing to diagnose Mr. Kelliher's vascular obstruction;

e.   Misdiagnosing Mr. Kelliher's vascular obstruction;

f.   Causing a delay in the diagnosis of Mr. Kelliher's vascular obstruction;

g.   Failing to treat Mr. Kelliher's vascular obstruction;

h.   Treating Mr. Kelliher's vascular obstruction improperly;

i.   Failing to order a formal angiogram;

j.   Using CTA only to assess Mr. Kelliher's vascular status;

k.   Failing to perform or administer mechanical thrombectomy (e.g. AngioJet), embolectomy, tissue plasminogen activator (tPA), anti-coagulation, anti-platelet therapy, or any other effective modality for treating vascular obstructions;

l.   Causing a delay in the treatment of Mr. Kelliher's vascular obstruction;

m.   Increasing the risk of harm to Mr. Kelliher of suffering the amputation of his right foot and lower leg;

n.   Depriving Mr. Kelliher of the opportunity to save his right foot and lower leg;

o.   Failing to have in place and/or enforce appropriate rules, policies, guidelines and/or procedures with regard to assessing and treating vascular obstructions;

p.   Failing to oversee the care and treatment of their patients;

q.   Failing to oversee the care and treatment given to Mr. Kelliher;

r.   Failing to select and retain only competent physicians, nurses and staff;

    s.   Failing to properly oversee all persons who practice medicine within their walls with regard to patient testing, evaluation, examination, monitoring, care and/or treatment;

    t.   Failing to adopt and enforce adequate rules and policies to ensure the quality of care to their patients;

    u.   Failing to use reasonable care in the maintenance of safe and adequate facilities and equipment;

    v.   Failing to act in accordance with accepted standards of medical care.

106.    Defendants, and each of them, assumed a duty to Edward Kelliher to render reasonable, proper and appropriate medical care, advice and treatment, in connection with his physical condition and to take the appropriate measures necessary to improve his medical condition and health and to avoid the risk of further harm and injury to him.

107.    Plaintiff Edward Kelliher looked to the defendants to administer the appropriate care and treatment to him.

108.    Plaintiff Edward Kelliher relied upon the medical knowledge, treatment and advice of the defendants and their employees, servants and actual and ostensible agents.

109.    The carelessness and negligence of the defendants increased the risk of harm, injuries, and damages suffered by Edward Kelliher as set forth above, and was a substantial factor in bringing about those injuries.

110.    As a direct and proximate result of defendants' negligence as aforesaid, Edward Kelliher sustained severe and permanent personal injuries, including severe and disabling neurological injuries, has experienced and in the future will experience great pain and suffering of

the mind and the body, has been caused to expend money in an effort to correct the conditions caused by the defendants, has been and shall in the future be unable to attend to his ordinary routine, usual duties, employment, affairs, avocations and occupations and was otherwise damaged with a consequent loss of earnings and earning capacity in addition to other losses caused thereby.

111.    Defendants AtlantiCare Physician Group Surgical Associates, AtlantiCare Physician Group P.A., Boardwalk Surgical Associates, P.A., AtlantiCare Regional Medical Center, Inc. and XYZ Corporations are liable for the negligence of defendants Kamal F. Kassis, M.D., Peter N. Thompson, M.D., John Doe and Jane Doe, and the physicians, physician assistants, nurse practitioners, nurses, interns, residents and other medical personnel who treated Mr. Kelliher, and the negligence of their agents, servants, workmen, employees, apparent employees and ostensible agents, under the doctrine of respondeat superior or otherwise.

WHEREFORE, plaintiff Edward Kelliher demands judgment in his favor and against defendants Kamal F. Kassis, M.D.; Peter N. Thompson, M.D.; AtlantiCare Physician Group Surgical Associates; AtlantiCare Physician Group P.A.; Boardwalk Surgical Associates, P.A.; AtlantiCare Regional Medical Center, Inc.; John Does; Jane Does and XYZ Corporations in an amount in excess of $150,000.00, together with attorney's fees, interest, and costs of suit.

24

**SECOND COUNT**
**CORPORATE NEGLIGENCE**
**EDWARD KELLIHER v. ALL DEFENDANTS**

112.    Plaintiff realleges and incorporates by reference each and every preceding paragraph as though set forth fully at length herein.

113.    AtlantiCare Physician Group Surgical Associates; AtlantiCare Physician Group P.A.; Boardwalk Surgical Associates, P.A.; AtlantiCare Regional Medical Center, Inc.; and XYZ Corporations, individually and acting by and through their duly authorized agents, servants, workmen and employees, were negligent and careless, both generally, and in the following particular aspects:

a.    Failing to have in place and/or enforce appropriate rules, policies, guidelines and/or procedures with regard to assessing and treating vascular obstructions;

b.    Failing to have in place the necessary and appropriate protocols and procedures to ensure that vascular obstructions are assessed and treated appropriately and effectively;

c.    Failing to oversee the care and treatment of their patients;

d.    Failing to oversee the care and treatment given to Mr. Kelliher;

e.    Failing to select and retain only competent physicians, nurses and staff;

f.    Failing to properly oversee all persons who practice medicine within their walls with regard to patient testing, evaluation, examination, monitoring, care and/or treatment;

25

g.    Failing to adopt and enforce adequate rules and policies to ensure the quality of care to their patients;

h.    Failing to use reasonable care in the maintenance of safe and adequate facilities and equipment.

114.    The negligence and carelessness of AtlantiCare Physician Group Surgical Associates; AtlantiCare Physician Group P.A.; Boardwalk Surgical Associates, P.A.; AtlantiCare Regional Medical Center, Inc.; and XYZ Corporations increased the risk of harm to the plaintiff, as well as caused the injuries and damages plaintiff suffered, all as more particularly described in this Complaint.

WHEREFORE, plaintiff Edward Kelliher claims compensatory damages against each of the defendants, jointly and severally, in an amount in excess of $150,000.00, plus interest and costs, damages for delay and such other relief as the Court deems just.

Respectfully submitted,

RAYNES McCARTY

BY:_____

Regina M. Foley
One Greentree Centre
10,000 Lincoln Drive East, Suite 201
Marlton, NJ 08053
(856) 854-1556
rmfoley@raynesmccarty.com
Attorney for Plaintiff

DATE: 5/13/14

26

## **JURY DEMAND**

Plaintiff Edward Kelliher hereby demands a trial by jury as to all issues.


RAYNES McCARTY


BY _____
                Regina M. Foley
                One Greentree Centre
                10,000 Lincoln Drive East, Suite 201
                Marlton, NJ 08053
                (856) 854-1556
                rmfoley@raynesmccarty.com
                Attorney for Plaintiff

DATE: 5/13/14

27

## CERTIFICATION

I hereby certify that the matter in controversy is not the subject of another action pending in any other court, or of a pending arbitration proceeding.

RAYNES McCARTY

BY: _____
         Regina M. Foley
         One Greentree Centre
         10,000 Lincoln Drive East, Suite 201
         Marlton, NJ 08053
         (856) 854-1556
         rmfoley@raynesmccarty.com
         Attorney for Plaintiff

DATE: 5/13/14

28

## CERTIFICATION OF AMOUNT IN CONTROVERSY
## PURSUANT TO LOCAL RULE 201.1

I hereby certify that the damages in controversy in this matter exceed the sum of $150,000, exclusive of interest and costs and any claim for punitive damages.

RAYNES McCARTY

BY: _____
       Regina M. Foley
       One Greentree Centre
       10,000 Lincoln Drive East, Suite 201
       Marlton, NJ 08053
       (856) 854-1556
       rmfoley@raynesmccarty.com
       Attorney for Plaintiff

DATE: 5/13/14

29